RATTET, PASTERNAK & GORDON-OLIVER, LLP
Proposed Attorneys for the Debtors
550 Mamaroneck Avenue
Harrison, New York 10528
(914) 381-7400

Jonathan S. Pasternak
Erica R. Feynman

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:                                              Chapter 11
                                                    Case No. 09-

DUANE STREET DESIGN STUDIO, LLC,

                        Debtor.
-------------------------------------------------------------X

## DECLARATION OF NILI LOTAN
## PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )

        NILI LOTAN, being duly sworn, deposes and says:

    1.  I am the managing member and sole member of Duane Street Design Studio, LLC

("Duane Street"), the above-captioned debtor and debtor-in-possession (collectively, the

"Debtor"). Pursuant to Bankruptcy Rule 1007(d) and Local Rule of this Court 1007-2, the Debtor

provides the following information.

    2.  Part I of this Affidavit describes the Debtor's business and circumstances leading to the

commencement of this chapter 11 case. Part II provides information required by Local

Bankruptcy Rule 1007-2.

## PART I

## BACKGROUND

3.    Duane Street is a wholesale and retail, sales and design, high end women's fashion company. It has been in existence since May of 2009 and is owned and operated by Deponent with the assistance of a small administrative and creative staff. The retail store, design studio and administration is all conducted from 188 Duane Street, New York, New York.

4.    Deponent ("Lotan") is a well recognized and highly accomplished member of the international fashion industry, specifically the high-end contemporary market. Prior to opening her own business, she had a successful 25 year career during which she acted as Vice President and Senior design director for leading fashion design companies such as Liz Claiborne, Ralph Lauren and Nautica. Her designs can be found around the world and her outstanding talent, merit and unique aesthetics have been recognized by these companies as they tasked her to conceptualize and design new businesses for these existing multi million dollar companies.

5.    After a long and very successful career designing women's clothing for others, in early 2003, Lotan began her own fashion design business. Her first launch of her own collection under the label "Nili Lotan" was immediately recognized and she received resounding support by the press including multiple articles from Women's wear Daily announcing her debut and a profile in Vogue.

6.    The launch of her own business came at a time when Lotan was working as a Vice President, Design Director at Nautica. She was approached by David Chu, the owner and founder of Nautica, who presented Lotan with an offer to financially back her own line of clothing.

Initially she agreed which venture began with him funding the intital start up costs.

7.   Parallel to putting together the design concept for her own label, designing the first collection and creating the foundation for a new business: financing, warehousing, press, sales agent, etc., Lotan and David Chu were in steady negotiations for the formation of a formal partnership. In or around the same time, Lotan was introduced to a fellow Israeli expatriate, Joseph Moshkovsky. Lotan's close friend suggested that Moshkovsky, an accountant, could assist her with the preparation of financial projections to Mr. Chu in order to help her communicate her long term business vision and to assist in structuring a formal financial arrangement.

8.   Ultimately Mr. Chu did not move forward with Lotan and the new venture, formed under the corporate name, Nili Lotan, Inc. ("NLI"). Although NLI was capitalized initially by David Chu, with the break down of partnership negotiations, Lotan sought capital elsewhere and Lotan became the sole shareholder and officer of NLI.

9.   By that time Moshkovsky had taken on the role as NLI's bookkeeper and accountant and offered to continue to serve NLI in that capacity. As Lotan is and always has been on the creative side of business, she accepted Moshkovsky's offer to continue maintaining NLI's books however she never signed any formal agreement with Moshkovsky.

10.  Moshkovsky quickly assumed a most unusual, unethical and improper role at NLI. Lotan now admits, at the time she was too trusting and didn't know any better. Moshkovsky took complete control over the financial side of NLI's business. This takeover of all of the financial aspects of NLI was effectuated unilaterally by Moshkovsky without any input by Lotan and he quickly became tyrannical about maintaining this course of conduct. Some of his irrational and unethical decisions included his insistence that Lotan provide him with blank signed checks so

that he could pay all of the company's accounts payable without any participation or request for authorization from Lotan. He insisted that all bookkeeping and accounting functions of NLI be managed from his office including NLI's electronic apparel management software, notwithstanding the fact that it was installed and maintained by his untrained and unqualified employees. He maintained a list of his own alleged personal and office expenses that were never requested, authorized or even communicated to Lotan or NLI and only became known when he commenced suit against NLI in August of 2007 (discussed below).

11. Lotan was highly driven and focused on making her new company a success. In doing so, she continued to do what she does best: design and manufacture beautiful sophisticated women's fashion. She left the bookkeeping and management of the financial affairs to Moshkovsky who she naively assumed, albeit wrongly, was both trustworthy and competent.

12. In 2006, when Lotan was taking steps to bring NLI to the next level and was trying to arrange for new investment capital, she grew ever more suspicious of Moshkovsky and his work on behalf of NLI. Moshkovsky refused, delayed and seemed incapable of preparing the financial documents that were requested by Lotan in order to provide would-be investors with the financial information required. This frustrated the process of obtaining new capital and in fact, NLI was unable to do so. However, it was the result of her failed attempts to obtain new funding that she first learned of substantial debts on NLI's books and Lotan became more determined than ever to fully understand the financial status of her company.

13. Lotan made repeated requests regarding NLI's alleged debts however each request was either completely ignored or put off. Finally, in June of 2006 Lotan finally received the first financial statement for NLI ever and was shocked to learn that NLI owed Moshkovsky over $1

million dollars. This was unbelievable to Lotan! Not once in the three years that he "managed" the books of NLI had he ever mentioned that the company owed anyone such a liability, let alone to him.

14. Lotan had never signed a promissory note, loan agreement or retainer agreement with or in favor of Moshkovsky, nor had she ever received a bill for services rendered or time records - - any of which might have provided a clue as to how a relatively small enterprise could amass such a substantial obligation to its bookkeeper.

15. Thereafter, Lotan was warned by several of NLI's key vendors and suppliers that Moshkovsky's dealings with them were highly unusual and were having a harmful effect on NLI's working relationships and reputation in the industry. Further, Moshkovsky's incompetence translated into product and development problems as well as delays in payment to vendors and employees, incorrect information input into production systems and problems with manufacturing and shipping, all of which resulted in lost revenue.

16. As a result of Lotan's creative genius, hard work, contacts and reputation acquired during a quarter century career in fashion, she grew NLI from sales of approximately $200,000 in its first year of business to over $3 million in 2007. In light of this incredible growth, the news of such a staggering seven figure obligation was simply impossible for Lotan to comprehend. The result of these horrifying revelations and Moshkovsky's complete unwillingness to relinquish the death grip that he had over NLI's finances left Lotan with no choice but to terminate Moshkovsky's employment and began the painstaking task of taking back the financial reins of NLI and piecing back together books and records from its inception. Unfortunately the task of recreating these books and records proved to be near impossible because without any of the supporting

documentation, which Moshkovsky refused to turn over, NLI was unable to find an accountant who was willing to take on such an unsurmountable task. It was not until 2009 after hundreds of thousands of dollars of litigation fees and "document dump" type discovery responses, that NLI began to eek out what barely passes for books and records during the era of Moshkovsky's seizure and control.

17.   Within three months of Moshkovsky's termination, both NLI and Lotan (personally) were served with a lawsuit by Moshkovsky and what ensued was years of costly and vicious litigation and hundreds of thousands of dollars in legal fees.  In the end, a judgment in excess of $1 million dollars[1] was entered against NLI thereby rendering it insolvent and while no judgment has been entered against Lotan, there are still claims by Moshkovsky pending against her individually and the years of baseless litigation against her that she was forced to defend along with the need by NLI for regular cash infusions have brought her to the brink of personal insolvency as well.

18.   The damage that Moshkovsky inflicted on NLI both while he was managing the books and the assault on it after his termination rendered NLI unable to meet its operational needs. Lotan was required to spend countless days and weeks dealing with litigation related issues, attending depositions, working with professionals to recreate over five years of books and records, all the while being expected to stay creative and keep a fledgling business operating. There were multiple lawsuits to attend to, teams of accountants and lawyers demanding information, legal fees in excess of $500,000 and a landlord ready to commence eviction proceedings. Vendors went unpaid, salaries fell into arrears as well as payments under its royalty and license agreement with her which allowed it to use the "Nili Lotan" name (which is trademarked and owned by Lotan and

has been since 2003).

19. In a blatant attempt to smear what remained of NLI's reputation Moshkovsky served subpoenas on NLI's key customers, sales agents, warehouses and its factor Hilldun. Besides causing widespread panic, Hilldun, decided that it would be easier to terminate all contracts with NLI and any entity associated with Lotan rather than be dragged into Court, regardless of the fact that the claims were baseless. The above problems made continued operations difficult at best however, without a factor, investor or source of capital, NLI was rendered unable to continue operating. At the close of 2008, NLI reported a loss of approximately $400,000.

20. At least six attempts were made to settle with Moshkovsky in order to save NLI but all were completely unsuccessful. The nail in NLI's coffin was the issuance of restraints by Moshkovsky on NLI's accounts which completely halted any ability of NLI to operate on its independent cash flow. Moshkovsky's vengeance suit had succeeded and NLI was crippled.

21. These events coupled with the need for Lotan to earn a living to support herself and her family, left her with no choice but to resign from NLI and seek employment elsewhere. Meanwhile with inventory languishing in warehouses, defaulted accounts payable growing, an eviction proceeding on the horizon and customers and employees running scared, NLI's professionals worked to recreate books and records and wind down its affairs.

22. In or about May, 2009, Lotan opened Duane Street Design Studio, LLC, the Debtor herein. The Debtor operates in the contemporary market which is the market in which Lotan has spent 25 years making a name for herself. After investing substantial sums of her own personal money into NLI, only to have it fail as a result of Moshkovsky's malpractice, incompetence, fraud

---

[1] Lotan maintains that the entry of the judgment against NLI by Moshkovsky was merely the result of NLI's lack of funds to effectively defend the claims brought against it which would have required forensic accounting teams,

and vengeance, Lotan was without the means to start over on of her own. Therefore, Duane Street was capitalized by not only Lotan but by certain of her friends and family who are reflected on the creditors list which are filed along with this petition.

23. As NLI's lease was in default as a result of the tens of thousands of dollars of back rent owed and on the verge of a dispossess, Duane Street negotiated a new lease with the landlord at a lower rent. Duane Street entered into a new license and royalty agreement with Lotan in order to obtain the license to use the "Nili Lotan" name; its current label is "Nili Lotan Duane Street New York." With a new company and new capital, Lotan focused on doing what she does best, designing beautiful women's fashion based on her own trade name, creative mind and new designs.

24. Operations at Duane Street have been difficult since day one. With the Moshkovsky lawsuit still pending against Lotan personally and judgment enforcement measures against NLI in full swing against various players in the contemporary market which is a relatively small industry, the word was out that Lotan was under attack. Investors were unwilling to lend to Duane Street, even though it was a new and separate entity with no relationship to NLI other than Lotan's creative mind and no factor, vendor or manufacturer was willing to issue credit. This has crippled Duane Street who has essentially been treading water since it opened.

25. It was not long before Moshkovsky set his sites on Duane Street and commenced a meritless successor liability action against it seeking recovery of an amount equal to the judgment he obtained against NLI. He then quickly moved for a temporary restraining order against the Debtors seeking a pre-judgment order of attachment which would effectively shut down Duane Street's operations. With this tactic it was clear to Lotan that Moshkovsky was "out for blood"

---

expert witnesses and the like.

and that his goal was to prevent any attempt by her to earn a living. Fortunately the State Court Judge did not grant the pre-judgment attachment and instead directed that all of the Debtor's bank accounts be placed under the control of a State Court appointed Receiver, Janice Page, CPA, of Ball Baker Leake, LLC (the "Receiver"), who has been acting in such capacity since on or about September 25, 2009.

26. Duane Street's ability to operate has been severely compromised by Moshkovsky's efforts to ruin Lotan and any attempt by her to earn a living. Operations are extremely limited as a result of the presence of the Receiver and her limitations by the State Court to only pay approved expenditures. Duane Street is still unable to obtain any credit from suppliers and vendors and no factor is willing to finance receivables in light of the constant attack. This situation has manifest itself in an inability of the Debtor to provide the goods ordered by its customers because it does not have the funds to pay for the raw materials and manufacturing of the goods ordered so it ends up shipping far less than the customer's order, which has a direct result on the Debtor's "bottom line." Of course, this is all in addition to the mounting legal fees to defend these baseless actions by Moshkovsky, and the costs of having a Receiver in place.

27. The Debtor believes that the baseless successor liability claims asserted by Moshkovsky are completely defensible.

28. As of the filing of this petition, NLI has or is about to file a chapter 7 bankruptcy proceeding which I am told by Debtor's counsel, will result in an independent trustee on behalf of all of NLI's creditors, taking ownership of any alleged successor liability claim that has been asserted by Moshkovsky. The Debtors are confident that upon investigation by NLI's trustee, that the alleged and disputed successor liability claim will be resolved and they can once and for all be

free to operate out from under the constant attack.

29. By the filing of these chapter 11 proceedings the attacks by Moshkovsky will be haulted and the Debtors put back in control of their own operations so as to allow them to focus on reorganizing their affairs, liquidating all claims within the confines of this proceeding and operate freely and profitably. In doing so, the Debtors will be in the best position possible to fund a plan of reorganization which provides for a meaningful distribution to their creditors.


## PART II

## INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007

30. In addition to the foregoing, Local Bankruptcy Rule 1007-4 requires certain information related to the Debtor, which is set forth below.

### Local Rule 1007-2(a)(1)

31. Duane Street is retail and wholesale women's contemporary fashion company.

### Local Rule 1007-2(a)(2)

32. This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. No trustee or committee has been appointed herein.

### Local Rule 1007-2(a)(3)

33. Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

### Local Rule 1007-2(a)(4)

34. A list of the names and addresses of the Debtor's 20 largest unsecured claims, excluding

those who would not be entitled to vote at a creditors' meeting under 11 U.S.C. Section 702; those who were employees of the Debtor at the filing fate, and creditors who are "insiders" as that term is defined in 11 U.S.C. Section 101(31) is annexed hereto as **Schedule I**.

**Local Rule 1007-2(a)(5)**

35. A list of the names and addresses of the Duane Street's five largest secured creditors is annexed hereto as **Schedule II**.

**Local Rule 1007-2(a)(6)**

36. A Balance Sheet for Duane Street is annexed as **Schedule III**.

**Local Rule 1007-2(2)(7)**

37. There are no publicly held securities of the Debtor. Nili Lotan is the 100% shareholder of the Debtor.

**Local Rule 1007-2(2)(8)**

38. All of the Debtors' bank accounts are in the possession of the Receiver.

**Local Rule 1007-2(a)(9)**

39. The Debtor is located at 188 Duane Street, New York, New York 10013.

**Local Rule 1007-2(a)(10)**

40. The Debtor's substantial assets as well as its books and records are located at its offices (as described above).

41. As the Debtor engages in wholesale sales outside the territorial limits of the United States, some of its inventory is currently in the possession of its warehouse company which in addition to its domestic location, is also located at Bergen Logistics, c/o Paul Klarenbeek Fashion Service, Bijsterhuizen 1105, 6546 AR  NIJMEGEN, The Netherlands.

**Local Rule 1007-2(a)(11)**

42. Pending actions or proceedings against the Debtors or their property are annexed hereto as **Exhibit IV.**

**Local Rule 1007-2(a)(12)**

43. The senior management of the Debtor consists of deponent Nili Lotan, its Managing Member.

**Local Rule 1007-2(b)(1)**

44. The estimated payroll to the employees of Duane Street, exclusive of officers and directors, for the thirty (30) day period following the filing of the chapter 11 petition is $26,500 which sum is inclusive of all payroll taxes and health insurance.

**Local Rule 1007-2(b)(2)**

45. The estimated amount to be paid by Duane Street for services to its officer/ director for the thirty (30) day period following the filing of the Chapter 11 petition is $15,000.

**Local Rule 1007-2(b)(3)**

46. The estimated schedule of cash receipts and disbursements for the thirty (30) day period following the filing of the Chapter 11 petition, net cash gain or loss, obligations and receivables expected to accrue but remaining unpaid, other than professional fees is annexed as **Schedule V.**

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Dated: January 4, 2010

                                      */s/ Nili Lotan, Managing Member*
                                      Nili Lotan, Managing Member of the Debtor

## Schedule I

**List of Debtors' 20 Largest Unsecured Creditors**

# United States Bankruptcy Court
## Southern District of New York

In re  **Duane Street Design Studio, LLC**
_____
Debtor(s)

Case No. _____

Chapter    **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [*or* chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian."  Do not disclose the child's name.  See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| JOSEPH MOSHKOWSKY<br>C/O SULLIVAN &<br>WORCESTER, LLP<br>1290 AVE OF THE AMERICAS<br>29 FL<br>NEW YORK, NY 10104 | Joseph Moshkovsky<br>c/o Sullivan & Worcester LLP<br>1290 Ave. of Americas, 29th Fl<br>New York, NY 10104 | Disputed<br>Successor Liability<br>Claim | Unliquidated<br>Disputed | 1,056,050.00 |
| CORTLANDT REALTY CO.<br>140 FULTON STREET<br>NEW YORK, NY 10003 | CORTLANDT REALTY CO.<br>140 FULTON STREET<br>NEW YORK, NY 10003 | RENTAL ARREARS | | 32,901.46 |
| TOP SUCCESS INDUSTIAL<br>LTD.<br>ALEXANDRA INDUSTIAL<br>BLDG<br>23-27 WING HONG STREET<br>KOWLOON, H.K. | TOP SUCCESS INDUSTIAL LTD.<br>ALEXANDRA INDUSTIAL BLDG<br>23-27 WING HONG STREET<br>KOWLOON, H.K. | KNIT<br>MANUFACTURER | | 26,288.10 |
| CD NETWORK<br>535 WEST 24TH STREET<br>5TH FLOOR<br>NEW YORK, NY 10011 | CD NETWORK<br>535 WEST 24TH STREET<br>5TH FLOOR<br>NEW YORK, NY 10011 | OUTSTANDING<br>COMMISSIONS<br>DUE SHOWROOM | | 23,460.80 |
| CHRISTOPHE DEMAISON<br>525 WEST 34TH STREET<br>NEW YORK, NY 10011 | CHRISTOPHE DEMAISON<br>525 WEST 34TH STREET<br>NEW YORK, NY 10011 | LOAN | | 21,304.05 |
| AMERICAN EXPRESS<br>P.O. BOX 1270<br>NEWARK, NJ 07101 | AMERICAN EXPRESS<br>P.O. BOX 1270<br>NEWARK, NJ 07101 | BUSINESS CREDIT<br>CARD | | 10,671.41 |
| WOMAN MANAGEMENT<br>199 LAFAYETTE STREET<br>7TH FLOOR<br>NEW YORK, NY 10012 | WOMAN MANAGEMENT<br>199 LAFAYETTE STREET<br>7TH FLOOR<br>NEW YORK, NY 10012 | MODELING<br>AGENCY | | 9,600.00 |
| BERGEN SHIPPERS EU<br>7300 WEST SIDE AVENUE<br>NORTH BERGEN, NJ 07047 | BERGEN SHIPPERS EU<br>7300 WEST SIDE AVENUE<br>NORTH BERGEN, NJ 07047 | EURPPEAN<br>WAREHOUSE | | 5,023.02 |
| CRESTHILL/GREAT NOTIONS<br>242 WEST 36TH STREET<br>9TH FLOOR<br>NEW YORK, NY 10018 | CRESTHILL/GREAT NOTIONS<br>242 WEST 36TH STREET<br>9TH FLOOR<br>NEW YORK, NY 10018 | TRIMMING<br>SUPPLIES | | 3,243.84 |

In re   **Duane Street Design Studio, LLC**                                    Case No. _____

_____

Debtor(s)

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
## (Continuation Sheet)

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| BERGEN SHIPPERS<br>7300 WEST SIDE AVENUE<br>NORTH BERGEN, NJ 07047 | BERGEN SHIPPERS<br>7300 WEST SIDE AVENUE<br>NORTH BERGEN, NJ 07047 | WAREHOUSE | | 2,339.13 |
| WORLDNET INTERNATIONAL<br>147-02/20 181ST STREET<br>SPRINGFIELD GARDENS, NY 11413 | WORLDNET INTERNATIONAL<br>147-02/20 181ST STREET<br>SPRINGFIELD GARDENS, NY 11413 | OVERSEAS SHIPPING | | 1,951.87 |
| JON CISLER<br>575 SIXTH AVENUE<br>SUITE 8B<br>NEW YORK, NY 10011 | JON CISLER<br>575 SIXTH AVENUE<br>SUITE 8B<br>NEW YORK, NY 10011 | GRAPHIC DESIGNS | | 1,685.63 |
| AMANDA KELLY DESIGN STUDIO<br>4 LOVE WALK<br>CAMBERWELL, LONDON | AMANDA KELLY DESIGN STUDIO<br>4 LOVE WALK<br>CAMBERWELL, LONDON | TEXTILE DESIGNS | | 1,190.00 |
| KARIMA<br>14-8 LEVIN KITNIS<br>BEERSHEVA 84106<br>ISRAEL | KARIMA<br>14-8 LEVIN KITNIS<br>BEERSHEVA 84106<br>ISRAEL | JEWELRY MANUFACTURER | | 1,169.00 |
| ANA RESTEPO<br>240 EAST 47TH STREET<br>APT 32C<br>NEW YORK, NY 10017 | ANA RESTEPO<br>240 EAST 47TH STREET<br>APT 32C<br>NEW YORK, NY 10017 | OUTSTANDING BOOKEEPING INVOICE | | 1,000.00 |
| BRADLEE INTERNATIONAL LTD.<br>212 WEST 35TH STREET<br>13TH FLOOR<br>NEW YORK, NY 10001 | BRADLEE INTERNATIONAL LTD.<br>212 WEST 35TH STREET<br>13TH FLOOR<br>NEW YORK, NY 10001 | FABRIC SUPPLIES | | 938.78 |
| CON EDISON<br>P.O. BOX 1702<br>New York, NY 10016 | CON EDISON<br>P.O. BOX 1702<br>New York, NY 10016 | UTILITIES | | 851.83 |
| UPS<br>P.O. BOX 7247-0244<br>PHILDELPHIA, PA 19170 | UPS<br>P.O. BOX 7247-0244<br>PHILDELPHIA, PA 19170 | DOMESTIC AND OVERSEAS SHIPPING | | 346.42 |
| HN ELITE CORP.<br>P.O. BOX 4868<br>WEEHAWKEN, NJ 07086 | HN ELITE CORP.<br>P.O. BOX 4868<br>WEEHAWKEN, NJ 07086 | TRUCKING COMPANY | | 317.50 |
| TUMBLING COLORS, INC.<br>P.O. BOX 99143<br>RALEIGH, NC 27624 | TUMBLING COLORS, INC.<br>P.O. BOX 99143<br>RALEIGH, NC 27624 | | | 180.00 |

In re   **Duane Street Design Studio, LLC**                               Case No.                           

                        Debtor(s)

# LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
## (Continuation Sheet)

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

      I, the Managing Member of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date  **December 21, 2009**                   Signature   **/s/ Nili Lotan**
                                                      **Nili Lotan**
                                                           **Managing Member**

    *Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
                                   18 U.S.C. §§  152 and 3571.

## Schedule II

**List of Debtors' 5 Largest Secured Creditors**

In re    **Duane Street Design Studio, LLC**                                              Case No._____
_____
                                                    Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | | |
| Account No.<br><br>**Carole Godin**<br>**176 Johnnycake Hollow Road**<br>**Pine Plains, NY 12567** | | - | **July, 2009**<br><br>**Loan** | | | | | |
| | | | Value $               0.00 | | | | 36,237.29 | 0.00 |
| Account No.<br><br>**Zeev Lotan**<br>**54 Belmont Avenue**<br>**Jersey City, NJ 07304** | | - | **May, 2009**<br><br>**Loan** | | | | | |
| | | | Value $               0.00 | | | | 26,404.05 | 0.00 |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |

**0**    continuation sheets attached

|  | Subtotal<br>(Total of this page) | 62,641.34 | 0.00 |
|---|---|---|---|
|  | Total<br>(Report on Summary of Schedules) | 62,641.34 | 0.00 |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                              Best Case Bankruptcy

# Schedule III

## Balance Sheet

# Duane Street Design Studio
# Balance Sheet
### As of November 30, 2009

|  | Nov 30, 09 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| Chase - Business Classic | 18,223.93 |
| TD Bank 7928540868 DUANE STREET | 25,369.31 |
| **Total Checking/Savings** | 43,593.24 |
| **Accounts Receivable** | |
| Accounts Receivable | 391,885.77 |
| **Total Accounts Receivable** | 391,885.77 |
| **Other Current Assets** | |
| Inventory - B/S | 36,763.00 |
| Utilities Security Deposit | 630.00 |
| **Total Other Current Assets** | 37,393.00 |
| **Total Current Assets** | 472,872.01 |
| **Fixed Assets** | |
| Computer | 519.73 |
| **Total Fixed Assets** | 519.73 |
| **Other Assets** | |
| Organization Costs | 4,794.59 |
| Rent Security Deposit | 31,500.00 |
| **Total Other Assets** | 36,294.59 |
| **TOTAL ASSETS** | **509,686.33** |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| Accounts Payable | 191,387.00 |
| **Total Accounts Payable** | 191,387.00 |
| **Other Current Liabilities** | |
| Due to Nili Lotan | 182,356.20 |
| Loan | 94,018.84 |
| Rent Security Payable | 31,500.00 |
| Sales Tax Payable | 9,750.51 |
| **Total Other Current Liabilities** | 317,625.55 |
| **Total Current Liabilities** | 509,012.55 |
| **Total Liabilities** | 509,012.55 |
| **Equity** | |
| **Nili Lotan** | |
| Draw | -13,801.79 |
| **Total Nili Lotan** | -13,801.79 |
| Opening Balance Equity | 100.00 |
| Net Income | 14,375.57 |
| **Total Equity** | 673.78 |
| **TOTAL LIABILITIES & EQUITY** | **509,686.33** |

## Schedule IV

Joseph Moshkovsky v. Nili Lotan Design Studio, LLC, Nili Lotan Retail, LLC and Duane Street
Design Studio, LLC, Supreme Court, New York County, Index No. 650478/09

# Exhibit V

**30 Day Budget**

**INCOME**

|  |  |
|---|---|
| WHOLESALE SALES COLLECTIONS | 177,717.71 |
| RETAIL SALES COLLECTIONS | 40,000.00 |
|  | . |
| CASH AVAILABLE FROM SALES | 217,717.71 |
|  |  |
| **EXPENSES** |  |
| ROYALTIES | 10,663.06 |
| COMMISSIONS DUE | 21,326.13 |
| **RENT AND OCCUPANCY** |  |
| INSURANCE - LIABILITY/PROPERTY | 1,000.00 |
| UTILITIES:ELECTRIC, WATER, PHONE | 1,550.00 |
| STUDIO AND STORE RENT | 10,600.00 |
| CELL PHONES | 657.00 |
| SANITATION | 70.75 |
| MINI STORAGE | 300.00 |
| PRODUCTION STORAGE ROOM | 275.00 |
| **OFFICE SUPPLIES** |  |
| DUES AND SUBSCRIPTIONS | 200.00 |
| COMPUTER EXPENSES | 500.00 |
| SHIPPING: UPS/FEDEX | 1,000.00 |
| OFFICE SUPPLIES | 500.00 |
| MESSENGERS | 300.00 |
| TRAVEL AND ENTERTAINMENT | 200.00 |
| STORE EXPENSES | 100.00 |
| **PROFESSIONAL FEES** |  |
| BOOKKEEPING | 1,000.00 |
| INDEPENDENT PRODUCTION | 3,783.72 |
| **SALARIES** |  |
| EMPLOYEE EXPENSES | 200.00 |
| WAGES | 24,105.00 |
| OFFICER WAGES | 15,000.00 |
| PAYROLL SERVICES/EXPENSES | 300.00 |
| DESIGN ASST/ADMIN ASST | 1,400.00 |
| HEALTH INSURANCE | 1,000.00 |
| WEEKEND HOURLY RETAIL WAGES | 250.00 |
| **BANK CHARGES** |  |
| BANK CHARGES | 100.00 |
| CREDIT CARD CHARGES | 500.00 |
| **PR AND MARKETING** |  |
| LOOKBOOK | 15,000.00 |
| COST OF PRODUCTION DEC 1ST AND FORWARD | 100,000.00 |
| PRE PRODUCTION | 16,000.00 |
|  |  |
| *EXPENSE SUBTOTAL* | 195,891.47 |
|  |  |
| SUBTOTAL | 21,826.24 |